**FILED**

**May 6, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 8:37 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| ANGELA MORGAN,<br>    Employee,<br>v.<br>DRS PRODUCT RETURNS,<br>    Employer,<br>and<br>LIBERTY MUTUAL INS. CO.,<br>    Insurance Carrier. | ) Docket No.: 2015-03-0412<br>)<br>) State File Number: 57560-2014<br>)<br>) Judge Pamela B. Johnson<br>)<br>)<br>)<br>) |

## EXPEDITED HEARING ORDER
## GRANTING TEMPORARY TOTAL DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Angela Morgan, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Ms. Morgan is entitled to temporary total disability benefits from December 10, 2015, through March 28, 2016. For the reasons set forth below, the Court finds Ms. Morgan sufficiently demonstrated that she is likely to prevail at a hearing on the merits on the issue of entitlement to temporary total disability benefits.[1]

### History of Claim

Ms. Morgan is a forty-three-year-old resident of Blount County, Tennessee. DRS employed Ms. Morgan as a damaged merchandise scanner. On September 22, 2014, Ms. Morgan lifted a box weighing approximately forty-five pounds when she felt a "pop" in her right elbow. Later, she developed pain extending into her neck and shoulder. (*See generally* T.R. 1-2.)

Following her work injury, Ms. Morgan missed work from September 22, 2014, through September 29, 2014. DRS excused the absences as Ms. Morgan submitted a

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

1

doctor's excuse for her absence during that time. On September 30, 2014, Ms. Morgan called Darlene Brown, her DRS supervisor, and left a message stating that her arm hurt and she would not be at work that day. On October 1, 2014, Ms. Morgan again contacted Ms. Brown and left a voicemail advising her doctor did not want her to report back to work until she had another appointment with him. *Id.* Ms. Morgan returned to work on October 6, 2014. Because Ms. Brown did not provide a doctor's note for her absences from September 30, 2014, through October 3, 2014, DRS did not excuse the absences. (*See generally* Exs. 2 and 6.)

On October 7, 2014, Ms. Brown called Ms. Morgan into her office to review DRS' attendance policy. Ms. Brown informed Ms. Morgan that her unexcused absences from September 30, 2014, through October 3, 2014, placed Ms. Morgan above the eight-point threshold, as she had prior unexcused absences before her injury. As a result, Ms. Brown advised Ms. Morgan that she was terminated. *Id.*

Ms. Morgan came under the care of Dr. David K. Calvert at BMH Occupational Health Center – Springbrook Clinic with complaints of right elbow pain. Dr. Calvert diagnosed Ms. Morgan with right elbow sprain and ordered physical therapy. Ms. Morgan later reported pain into her neck and shoulder. Dr. Calvert thereafter discharged Ms. Morgan from his care and recommended an orthopedic referral. (*See generally* Exs. 9 and 10.)

Dr. John Reynolds of Tennessee Orthopedic Clinic evaluated Ms. Morgan for her right upper extremity pain. Dr. Reynolds recommended an MRI of the cervical spine and right shoulder. He opined that Ms. Morgan's right upper extremity was coming from her cervical spine and recommended she follow up with Dr. Patrick Bolt. (*See generally* Ex. 7 at 86-87.)

Dr. Bolt diagnosed a herniated disc at C5-6 and recommended a C5-6 anterior cervical discectomy and fusion. Dr. Bolt performed the recommended surgery on December 10, 2015. (*See generally* Ex. 8.)

By deposition taken February 10, 2016, Dr. Bolt testified he restricted Ms. Morgan from heavy lifting or any vigorous neck movement following surgery. (Ex. 7 at 7.) Dr. Bolt explained further:

> I think that someone with a disc herniation and with pain in the right arm would have – I would likely restrict them from heaving lifting particularly, and generally the restrictions I place on people are no lifting greater than five pounds frequently or 20 pounds total. I limit people from overhead or outstretched arm use. I limit people from prolonged cervical flexion or extension[.] . . .

Immediately after the surgery, we typically have people out of work entirely until such time that they have healed their wounds. Then we have people on a no heavy lifting and no cervical extension or flexion, no overhead or outstretched arm use[.] . . .

It typically would be until the first postoperative visit two to three weeks out, which in this case was on January 25, 2016, I believe. I take that back, December 28, 2015.

(Ex. 7 at 37-38.)

By office notes dated December 28, 2015, and January 25, 2016, Dr. Bolt specifically instructed Ms. Morgan to avoid bed rest and increase activity as pain allows. In the March 28, 2016 office note, Dr. Bolt indicated, "The patient was out of work, by my order, from the date of her surgery till today. I am placing her on light duty today." (*See generally* Ex. 8.)

Ms. Morgan filed a Petition for Benefit Determination on November 12, 2015. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on December 3, 2015. Ms. Morgan filed a Request for Expedited Hearing, and this Court heard the matter on April 15, 2016.

During the Expedited Hearing, Ms. Morgan testified her physicians released her to work with restrictions after her September 22, 2015 work injury. However, she developed pain from the sling prescribed for her to wear and left work early on September 29, 2014. She remained out of work through October 3, 2014, until she saw her physician. She testified DRS terminated her for cause because she missed work due to her injury, but indicated she was eligible for rehire. (*See also* Ex. 3.)

Ms. Morgan further testified the slow healing of the bone graft following her December 10, 2015 surgery took longer than expected and Dr. Bolt did not release her to return to work until March 28, 2016. On March 28, 2016, Dr. Bolt released her to return to work with restrictions of no lifting anything other than a gallon of milk. *Id.*

Daniel Phillips, Operations Specialist for DRS, testified he completed the initial accident report following Ms. Morgan's September 22, 2014 work injury. Mr. Phillips stated DRS accommodated Ms. Morgan following the work injury, explaining another coworker placed boxes on Ms. Morgan's table for her to scan. Once Ms. Morgan completed scanning the items, her coworker moved the box to a pallet. He additionally testified DRS terminated Ms. Morgan for violation of the DRS attendance policy and confirmed her eligibility for rehire. Mr. Phillips indicated were it not for her termination for cause, DRS would have accommodated Ms. Morgan's restrictions upon her release to return to work light duty on March 28, 2016. (*See also* Ex. 4.)

3

Ms. Morgan contended Dr. Bolt failed to recall during his deposition Ms. Morgan's slow healing following the December 10, 2015 surgery when he testified as to the timeline he generally returns a patient to work following the surgery. Dr. Bolt's subsequent office notes reveal a slow healing of the bone graft and as a result, he clearly kept her completely out of work until March 28, 2016. Any accommodation that DRS may have made is irrelevant because Dr. Bolt placed Ms. Morgan off work from December 10, 2015, through March 28, 2016. Accordingly, Ms. Morgan asserted she is entitled to temporary total disability benefits from December 10, 2015, through March 28, 2016.

DRS countered Dr. Bolt's deposition testimony indicated he released Ms. Morgan to return to work light duty on December 28, 2015. DRS further argued but for Ms. Morgan's termination for cause, DRS would have accommodated her restrictions. As such, Ms. Morgan is not entitled to temporary total disability benefits from December 10, 2015, through March 28, 2016.

**Findings of Fact and Conclusions of Law**

Ms. Morgan has the burden of proof on all essential elements of her workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). At an Expedited Hearing, however, Ms. Morgan need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must present sufficient evidence from which the Workers' Compensation Judge can determine that she is likely to prevail at a hearing on the merits. *Id.*

Under Workers' Compensation law, Ms. Morgan is eligible for temporary disability benefits if: (1) she became disabled from working due to a compensable injury; (2) a causal connection exists between the injury and the inability to work; and (3) she establishes the duration of the period of disability. *See Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978)). However, DRS may terminate temporary total disability benefits either by Ms. Morgan's ability to return to work or her attainment of maximum recovery. *Id.*

In the present case, Ms. Morgan argues Dr. Bolt's March 28, 2016 office note establishes her entitlement to temporary total disability benefits from December 10, 2015, through March 28, 2016. In contrast, DRS contends Dr. Bolt's deposition testimony limited Ms. Morgan's entitlement to temporary total disability benefits to December 10, 2015, through December 28, 2015. This Court disagrees with DRS.

4

Reviewing Dr. Bolt's deposition in its entirety, Dr. Bolt discussed the time frame he generally released his patients to return to restricted duty following surgery and he indicated that date would have been December 28, 2015, in Ms. Morgan's case. However, Dr. Bolt's office notes do not support the general time frame for release to return to work. Instead, Dr. Bolt's March 28, 2016 office note specifically states he kept Ms. Morgan off work from the date of surgery until March 28, 2016. In addition, Ms. Morgan testified the healing of the bone graft took longer than expected and resulted in her out-of-work status until her release on March 28, 2016. Accordingly, this Court finds Ms. Morgan demonstrated: (1) she became disabled from working due to a compensable injury; (2) a causal connection exists between the injury and the inability to work; and (3) the duration of the period of disability.

Based upon the evidence introduced at the Expedited Hearing, and as a matter of law, this Court finds Ms. Morgan sufficiently demonstrated that she is likely to prevail at a hearing on the merits on the issue of entitlement to temporary total disability benefits from December 10, 2015, through March 28, 2016. Therefore, her request for additional temporary total disability benefits is granted.

**IT IS, THEREFORE, ORDERED** as follows:

1. The amount of temporary disability benefit is $254.56 per week. Payment of past-due benefits in the amount of $254.56 per week shall be made for the period from December 10, 2015, to March 28, 2016, for a total payment of $3,963.88.

2. This matter is set for an Initial (Scheduling) Hearing on **July 11, 2016, at 1:30 p.m.** Eastern Time.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED** this the 6th day of May, 2016.

_Pamela B Johnson_

**HON. PAMELA B. JOHNSON**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Pamela B. Johnson, Court of Workers' Compensation Claims. You must call (865) 594-0091 or (855) 543-5041 toll free to participate in the Initial Hearing. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the

6

purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
- EXHIBIT 1: Wage Statement, Form C-41;
- EXHIBIT 2: Affidavit of Darlene Brown;
- EXHIBIT 3: Deposition Transcript of Angela E. Morgan;
- EXHIBIT 4: Deposition Transcript of Daniel V. Phillips;
- EXHIBIT 5: Deposition Transcript of Robert W. McKechnie;
- EXHIBIT 6: Deposition of Darlene Brown;
- EXHIBIT 7: Deposition of Patrick M. Bolt, M.D.;
- EXHIBIT 8: Medical Records of Tennessee Orthopaedic Clinic;
- EXHIBIT 9: Medical Records of BMH – Springbrook Clinic; and
- EXHIBIT 10: Medical Records of Blount Memorial Hospital.

Technical Record:
- Petition for Benefit Determination, filed November 12, 2015;
- Dispute Certification Notice, filed December 3, 2015;
- Request for Expedited Hearing, filed December 10, 2015;
- Employer's Position Statement, filed December 15, 2015;
- Employer's Motion for Continuance, filed February 16, 2016;
- Order of Continuance, issued February 19, 2016;
- Pre-Hearing Order, issued February 19, 2016;
- Motion for Continuance, filed March 21, 2016;
- Order of Continuance, issued March 28, 2016;
- Agreed Exhibit List, filed April 11, 2016; and
- Supplemental Agreed Exhibit list, filed April 14, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the __6th__ day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Ralph Brown, Esq., Employee's Counsel | | | X | rbrown@brownandroberto.com |
| Eric Shen, Esq., Employer's Counsel | | | X | eric.shen@libertymutual.com |

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9